UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GEORGE RAIKOS, Individually, and on behalf of
others similarly situated persons,

                Plaintiff,

     v.

JPMORGAN CHASE & CO.,

                Defendant.

Civil Action No. 1:08-cv-01274-JGK

**ELECTRONICALLY FILED**

---

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANT'S MOTION TO DISMISS

Sam S. Shaulson (SS 0460)
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY
212.309.6000
212.309.6001 (fax)

      - and –

Sarah E. Bouchard (*admitted pro hac vice*)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, Pennsylvania 19103
(215) 963-5000
(215) 963-5001 (fax)

ATTORNEYS FOR DEFENDANT
  JPMorgan Chase & Co.

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 3

I.   The Court Is Empowered To Strike Plaintiff's Class Claims............................................. 3

II.  Federal Law Preempts Using Rule 23 To Adjudicate Class Claims For Overtime........... 4

A.   Plaintiff's Use of Rule 23 To Adjudicate His State Law Class Claim For
     Overtime Is Expressly Preempted by FLSA Section 16(b)........................................ 4

B.   Plaintiff's Use Of Rule 23 To Adjudicate His State Law Class Claim For
     Overtime Also Is Impliedly Preempted by FLSA Section 16(b)................................. 5

III. Litigating Plaintiff's State Law Overtime Claim Under Rule 23 Would Violate
     The Rules Enabling Act By Abridging Substantive Rights Of Absent Class
     Members And Chase. ................................................................................................ 15

IV.  As A Matter Of Law, Plaintiff Cannot Satisfy The Requirements For Maintaining
     A Class Action Under Rule 23. ................................................................................. 18

A.   It Is Not Possible For Plaintiff To Establish That His Proposed Class Is So
     Numerous That Joinder Of Claims Is Impracticable................................................. 18

B.   Plaintiff's Decision To Waive Liquidated Damages Under The NYLL On
     Behalf Of The Class Renders Him An Inadequate Class Representative. ................. 19

C.   As a Matter of Law, an Opt-Out Class Action Under Rule 23 Is Not Superior
     To Other Available Methods For Adjudication. ....................................................... 21

CONCLUSION .................................................................................................................. 24

# TABLE OF AUTHORITIES

## FEDERAL CASES

Amchem Products, Inc. v. Windsor,
  521 U.S. 591 (1997) ....................................................................................15, 19

Ansoumana v. Gristede's Operating Corp.,
  201 F.R.D. 81 (S.D.N.Y. 2001)............................................................... 10

Barabin v. Aramark Corp.,
  210 F.R.D. 152 (E.D. Pa. 2002) ............................................................. 4

Barnes v. America Tobacco Co.,
  161 F.3d 127 (3d Cir. 1998) ................................................................. 21

Bartleson v. Winnebago Industries, Inc.,
  219 F.R.D. 629 (N.D. Iowa 2003)........................................................ 19

Berry v. 34 Irving Place Corp.,
  4 Wage & Hour Case. (BNA) 564 (S.D.N.Y. 1944) ................................. 6

Brooklyn Sav. Bank v. O'Neill,
  324 U.S. 697 (1945) ........................................................................... 6

Cameron-Grant v. Maxim Healthcare Services, Inc.,
  347 F.3d 1240 (11th Cir. 2003)............................................................. 7

Chao v. A-One Medical Services, Inc.,
  346 F.3d 908 (9th Cir. 2003)............................................................... 12

Choimbol v. Fairfield Resorts, Inc.,
  No. 05-463, 2006 WL 2631791 (E.D. Va. Sept. 11, 2006) ...................... 7

Clean Air Markets Group v. Pataki,
  338 F.3d 82 (2d Cir. 2003)................................................................... 6

Connolly v. McCall,
  254 F.3d 36 (2d Cir. 2001)................................................................... 3

De Asencio v. Tyson Foods, Inc.,
  342 F.3d 301 (3d Cir. 2003)............................................................16, 20

De La Cruz v. Gill Corn Farms,
  No. 03-1133, 2005 WL 5419056 (N.D.N.Y. Jan. 25, 2005)................... 8, 21

De La Fuente v. FPM Ipsen Heat Treating, Inc.,
    No. 02 C 50188, 2002 WL 31819226 (N.D. Ill. Dec. 16, 2002)............................................. 23

Denney v. Deutsche Bank, AG,
    443 F.3d 253 (2d Cir. 2006)................................................................................................... 18

Edwards v. City of Long Beach,
    467 F. Supp. 2d 986 (C.D. Cal. 2006) ........................................................................9, 22, 23

Eisen v. Carlisle & Jacquelin,
    417 U.S. 156 (1974) ........................................................................................................... 8, 11

Ellis v. Edward D. Jones & Co., L.P.,
    527 F. Supp. 2d 439 (W.D. Pa. 2007) ...................................................... 7, 11, 13, 14, 16, 17

Evancho v. Sanofi-Aventis U.S., Inc.,
    No. 07-2266, 2007 WL 4546100 (D.N.J. Dec. 19, 2007).................................................. 8, 9

Farhy v. Janney Montgomery Scott, LLC,
    No. 06-3202; 06-3969, 2007 WL 1455764 (E.D. Pa. Apr. 26, 2007)...................................... 17

Fogarazzao v. Lehman Brothers, Inc.,
    232 F.R.D. 176 (S.D.N.Y. 2005)............................................................................................ 22

Foster v. Food Emporium,
    No. 99-3860, 2000 WL 1737858 (S.D.N.Y. Apr. 26, 2000) .................................................. 21

Gade v. National Solid Wastes Management Association,
    505 U.S. 88 (1992) .................................................................................................................. 5

Gjurovich v. Emmanuel's Marketplace, Inc.,
    282 F. Supp. 2d 91 (S.D.N.Y. 2003) ....................................................................................... 4

Gonzalez v. City of New York,
    396 F. Supp. 2d 411 (S.D.N.Y. 2005) .................................................................................... 12

Guzman v. VLM, Inc.,
    No. 07-2008 WL 597186 (E.D.N.Y. Mar. 2, 2008) ............................................................... 17

Harper v. Yale Int'l Ins. Agency Inc.,
    No. 03-3789, 2004 WL 1080193 (N.D. Ill. May 12, 2004)....................................................... 9

Hoffman-LaRoche, Inc. v. Sperling,
    493 U.S. 165 (1989) ...........................................................................................2, 7, 8, 11, 16

Hyman v. WM Finance Services, Inc.,
  No. 06-4038, 2007 WL 1657392 (D.N.J. June 7, 2007)............................................. 9

Iglesias-Mendoza v. La Belle Farm, Inc.,
  239 F.R.D. 363 (S.D.N.Y. 2007)................................................................................ 10

International Paper Company v. Ouellette,
  479 U.S. 481 (1987) .................................................................................................... 6

Kakani v. Oracle Corp.,
  No. 06-6493, 2007 WL 1793774 (N.D. Cal. Jun. 19, 2007)...................................... 13

Klein v. Ryan Beck Holdings, Inc.,
  No. 06-3460, 2007 WL 2059828 (S.D.N.Y. July 13, 2007)....................................... 13

LaChapelle v. Owens-Illinois, Inc.,
  513 F.2d 286 (5th Cir. 1975).................................................................................... 4, 8

Lehman v. Legg Mason, Inc.,
  No. 06-02484, 2007 WL 2768519 (M.D. Pa. Sept. 20, 2007)................................... 17

Leuthold v. Destination America,
  224 F.R.D. 462 (N.D. Cal. 2004) .........................................................................22, 23

McClain v. Leona's Pizzeria, Inc.,
  222 F.R.D. 574 (N.D. Ill. 2004) ........................................................................9, 22, 23

Mike v. Safeco Insurance Co. of America,
  223 F.R.D. 50 (D. Conn. 2004) ..........................................................................21, 22

Moeck v. Gray Supply Corp.,
  No. 03-1950, 2006 WL 42368 (D.N.J. Jan. 6, 2006) ................................................ 9

Molina v. Sea-Land Services, Inc.,
  2 F. Supp. 2d 180 (D.P.R. 1997) ............................................................................... 12

Muecke v. A-Reliable Automobile Parts and Wreckers, Inc.,
  No. 01-2361, 2002 WL 1359411 (N.D. Ill. June 21, 2002).........................13, 22, 23

Myers v. Hertz Corp.,
  No. 02-4325, 2007 WL 2126264 (E.D.N.Y. July 24, 2007)...............................21, 23

Neary v. Metropolitan Prop. & Casualty Insurance Co.,
  472 F. Supp. 2d 247 (D. Conn. 2007)....................................................................... 17

iv

Otto v. Pocono Health System,
    457 F. Supp. 2d 522 (M.D. Pa. 2006)....................................................... 9

Overnite Transport Co. v. Tianti,
    926 F.2d 220 (2d Cir. 1991).................................................................. 5

Prickett v. DeKalb County,
    349 F.3d 1294 (11th Cir. 2003)............................................................ 4

Riddle v. National Security Agency, Inc,
    No. 05-5880, 2007 WL 2746597 (N.D. Ill. Sept. 13, 2007).................................... 23

Robidoux v. Celani,
    987 F.2d 931 (2d Cir. 1993).................................................................. 18

Rodriquez v. The Texan, Inc.,
    No. 01-1478, 2001 WL 1829490 (N.D. Ill. Mar. 7, 2001) ................................... 9, 10

Schneidewind v. ANR Pipeline Co.,
    485 U.S. 293 (1988) ...................................................................... 4, 7

Schwartz v. Dana Corp./Parish Division,
    196 F.R.D. 275 (E.D. Pa. 2000) ............................................................ 22

Thompson v. Merck & Co.,
    Nos. 01-1004, 01-1328, 01-3011, 01-6029, 02-1196, 02-4176, 2004 WL 62710
    (E.D. Pa. Jan. 6, 2004) ................................................................... 3, 4

Tran v. Le French Baker, Inc.,
    No. 94-0482, 1995 WL 374342 (N.D. Cal. June 14, 1995).................................... 12

United States v. Locke,
    529 U.S. 89 (2000) ........................................................................ 15

Webster v. Fall,
    266 U.S. 507 (1925) ....................................................................... 10

Westerfield v. Washington Mutual Bank,
    No. 06-2817, 2007 WL 2162989 (E.D.N.Y. July 26, 2007)................................... 17

Williams v. Trendwest Resorts, Inc.,
    No. 05-0605, 2007 WL 2429149 (D. Nev. Aug. 20, 2007)..................................... 9

Woodard v. Fedex Freight East, Inc.,
    No. 06-1968, 2008 WL 471552 (M.D. Pa. Feb. 19, 2008)............................8, 10, 14

v

## STATE CASES

Carter v. Frito-Lay, Inc.,
  425 N.Y.S.2d 115 (App. Div. 1st Dep't 1980), aff'd, 419 N.E.2d 1079 (N.Y. 1981) ........19, 20

Rubin v. Nine West Group, Inc.,
  No. 0763/99, 1999 WL 1425364 (N.Y. Sup. Ct. Nov. 3, 1999) ........................................... 20

Small v. Lorillard Tobacco Co.,
  679 N.Y.S.2d 593 (App. Div. 1st Dep't 1998) ...................................................... 12

Super Glue Corp. v. Avis Rent a Car System, Inc.,
  517 N.Y.S.2d 764 (App. Div. 2d Dep't 1987) ....................................................... 20

## FEDERAL STATUTES AND COURT RULES

28 U.S.C. § 2072 ..................................................................................... 2, 15

29 U.S.C. § 216 .....................................................................................*passim*

29 U.S.C. § 218 ........................................................................................ 14

29 U.S.C. § 251 ......................................................................................... 8

Fed. R. Civ. P. 23 ...................................................................................*passim*

## STATE STATUTES, REGULATIONS, AND COURT RULES

N.Y. Lab. Law § 198 ................................................................................... 19

N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 ................................................... 12

CPLR § 901............................................................................... 19, 20, 21, 23

## MISCELLANEOUS SOURCES

7B Wright & Miller, Federal Practice and Procedure Civ. 2d §§ 1785, 1795 (1986)................... 3

A. Conte and H. Newberg, Newberg on Class Actions §§ 1:2, 3:3 (4th ed. 2002) ...............15, 18

Theodore Eisenberg and Geoffrey P. Miller, The Role Of Opt Outs And Objectors In Class
  Action Litigation: Theoretical And Empirical Issues, 57 Vand. L. Rev. 1529 (2004) ............. 13

Secretary of Labor Amicus Letter Brief submitted in
  Long John Silver's Restaurants, Inc. v. Cole,
  No. 05-3039 (D.S.C. Filed Dec. 13, 2005) .......................................................11, 16

vi

## INTRODUCTION

Plaintiff George Raikos is a former loan officer for Defendant JPMorgan Chase & Co. ("Chase").[1]  Plaintiff asserts a claim for overtime pay under the Fair Labor Standards Act ("FLSA"), which he seeks to litigate as a nationwide FLSA collective action under FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all loan officers employed by Chase in the State of New York.  (Compl. Count I, ¶¶ 42-43).  Plaintiff also asserts a claim for overtime under the New York Labor Law ("NYLL"), which he seeks to litigate as a class action under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") on behalf of all loan officers employed by Chase in the State of New York.  (Compl. Count II, ¶¶ 50-51).

While Chase disputes Plaintiff's allegations that he is entitled to overtime, the merits of Plaintiff's exemption status is an issue for another day.  In its present motion, Chase seeks to dismiss Plaintiff's class claims brought under the NYLL, as his attempt to assert an overtime claim as an opt-out class action under Rule 23 is precluded in this action for multiple reasons. First, the method through which Plaintiff seeks to litigate his New York overtime claim – as a Rule 23 opt-out class action – is both expressly and impliedly preempted by the FLSA's written consent requirement.  By its terms, the FLSA's opt-in requirement applies to any "action to recover the liability prescribed" by the FLSA's overtime requirements.  29 U.S.C. § 216(b). Because this case indisputably is an action to recover the liability prescribed by the FLSA – Plaintiff expressly seeks to recover overtime damages under the FLSA in Count I of his Complaint – Section 16(b) expressly preempts Plaintiff's attempt to pursue his claims in this action on an opt-out, class basis.

Moreover, FLSA Section 16(b) also impliedly preempts an opt-out class action for overtime under Rule 23 because such class claims conflict with Congress's purpose in mandating that only those individuals who affirmatively "opt into" an FLSA collective action are bound by the judgment rendered in the case.  Congress specifically created the opt-in requirement to

---

[1]    As it must, for purposes of this motion, Chase accepts all of Plaintiff's factual allegations as true.

protect the rights of absent class members, and to "free[] employers from the burden of representative actions." Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 173 (1989). By contrast, in a Rule 23 class action, the exact opposite occurs: all class members are bound by the judgment unless they affirmatively opt out of the case regardless of whether they provide their written consent. Thus, courts have repeatedly recognized that the adjudication of overtime claims (including those under state law) as an opt-out class action under Rule 23 would eviscerate the opt-in requirement Congress created in FLSA Section 16(b). Indeed, adjudicating the overtime claims of *absent* class members under New York law on an opt-out basis would, under principles of *res judicata* and *collateral estoppel*, necessarily result in the adjudication of these individuals' *FLSA rights*, even without their written consent. This is the exact result Congress sought to prohibit in enacting Section 16(b) of the FLSA.

Plaintiff's attempt to use a rule of federal procedure – Rule 23 – to adjudicate the overtime claims of absent class members without their written consent also contravenes the Rules Enabling Act ("REA"), which prohibits the application of a rule of procedure where such application would "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). Courts, as well as the United States Department of Labor, have recognized that the written consent requirement under FLSA Section 16(b) is a substantive protection both for absent class members and employers. As a procedural rule, the opt-out provisions of Rule 23 must give way to the substantive rights that Congress created in the express opt-in requirement of Section 16(b).

Plaintiff's class claim for overtime under state law also should be dismissed because, as a matter of law, Plaintiff cannot meet three of the prerequisites for bringing a class action under Rule 23. First, in light of the availability of the opt-in mechanism of Section 216(b) of the FLSA, Plaintiff cannot show that joinder is so impracticable to make certification appropriate. Second, to circumvent New York's prohibition on class actions under a statute – like the NYLL – that provides for recovery of a penalty, Plaintiff and his counsel have purported to waive not only his own, but the entire putative class's right to liquidated damages under the NYLL. In so doing, Plaintiff and his counsel have rendered themselves inadequate class representatives.

2

Third, Plaintiff cannot show the opt-out class action "is superior to all other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Court after court has decided that a Rule 23 opt-out class action for overtime is not superior to an opt-in collective action under FLSA Section 16(b), and on that basis, precluded plaintiffs from asserting class claims for overtime under state law.

For all these reasons, Chase respectfully requests that the Court strike Plaintiff's state law overtime claim in Count II to the extent he asserts it on behalf of a Rule 23 opt-out class.

## ARGUMENT

### I.    THE COURT IS EMPOWERED TO STRIKE PLAINTIFF'S CLASS CLAIMS.

Rule 23(d)(1)(D) provides:

> (d)(1) In conducting an action under this rule [Rule 23 of the Federal Rules of Civil Procedure], the court may issue orders that . . . (1) require that the pleadings be amended to <u>eliminate allegations about representation of absent persons</u> and that the action proceed accordingly. . . .

Fed. R. Civ. P. 23(d)(1)(D) (emphasis added).[2] Orders under Rule 23(d)(1)(D) are "procedurally inseparable" from a court's duty under Rule 23(c)(1) to determine "[a]s soon as practicable after the commencement of an action brought as a class action . . . whether it is to be so maintained." <u>See</u> 7B Wright & Miller, <u>Federal Practice and Procedure Civ. 2d</u> § 1795 (1986).

Either party may move for a determination under Rule 23(c)(1), and the Court need not wait for Plaintiff to file a motion for class certification. <u>Id.</u> § 1785. <u>See also</u> <u>Connolly v. McCall</u>, 254 F.3d 36, 42 (2d Cir. 2001) (affirming the dismissal of a class claim "on the pleadings and prior to discovery"). Rule 23(d)(1)(D) orders are particularly appropriate where plaintiffs plainly cannot satisfy the requirements of Rule 23. <u>See, e.g.</u>, <u>Thompson v. Merck & Co.</u>, Nos. 01-1004, 01-1328, 01-3011, 01-6029, 02-1196, 02-4176, 2004 WL 62710, at *2 (E.D.

---

[2]    Prior to the 2007 amendments to the Federal Rules of Civil Procedure, the language of Rule 23(d)(1)(D) previously appeared in Rule 23(d)(4). Thus, cases referencing this provision prior to the 2007 amendments referred to Rule 23(d)(4).

Pa. Jan. 6, 2004) (granting motion to strike class allegations because plaintiffs could not satisfy Rule 23); <u>Barabin v. Aramark Corp.</u>, 210 F.R.D. 152, 162 (E.D. Pa. 2002) (same).

## II. FEDERAL LAW PREEMPTS USING RULE 23 TO ADJUDICATE CLASS CLAIMS FOR OVERTIME.

The Supreme Court has explained that federal preemption of state law can occur under three circumstances: (1) where Congress explicitly preempts a state law, (2) where a state law conflicts with federal law by standing as an obstacle to the accomplishment of Congress's full purposes and objectives, or (3) where Congress has indicated an intent to occupy a given field to the exclusion of state law. <u>Schneidewind v. ANR Pipeline Co.</u>, 485 U.S. 293, 299-300 (1988). Here, the first two types of preemption (express preemption and implied conflict preemption) both operate to preclude Plaintiff's effort to adjudicate his state law overtime claim as an opt-out class action under Rule 23.

### A. Plaintiff's Use of Rule 23 To Adjudicate His State Law Class Claim For Overtime Is Expressly Preempted by FLSA Section 16(b).

In Section 16(b) of the FLSA, Congress provided that "[a]n *action* to recover the liability prescribed in [Section 6, 7, or 15(a)(3) of the FLSA] may be maintained against any employer . . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b) (emphasis added). The provision further states that no person shall be a party to any such action unless that person affirmatively opts into the action by giving his or her written consent and filing it with the court. <u>Id.</u> <u>See also</u> <u>LaChapelle v. Owens-Illinois, Inc.</u>, 513 F.2d 286, 289 (5th Cir. 1975) (under the FLSA, "no person will be bound by or may benefit from judgment unless he has affirmatively 'opted into' the class; that is, given his written, filed consent"); <u>Gjurovich v. Emmanuel's Marketplace, Inc.</u>, 282 F. Supp. 2d 91, 95 (S.D.N.Y. 2003) ("only potential plaintiffs who 'opt-in' can be 'bound by the judgment' or 'benefit from it'"). According to the plain language of Section 16(b), "plaintiffs do not opt-in or consent to join an action as to specific claims, but *as to the action as a whole.*" <u>Prickett v. DeKalb County</u>, 349 F.3d 1294, 1297 (11th Cir. 2003) (emphasis added).

4

The instant matter is an action to recover the liability prescribed in Section 7 of the FLSA. In Count I of his Complaint, Plaintiff asserts that he and all loan officers employed by Chase in the State of New York are entitled to overtime pay under FLSA Section 7. (Compl. ¶¶ 38-42). Accordingly, because only individuals who can recover in this action are those persons who affirmatively opt into the case by giving their written consent, Plaintiff's attempt to assert his state law claim using the opt-out procedures of Rule 23 is preempted.

### B. Plaintiff's Use Of Rule 23 To Adjudicate His State Law Class Claim For Overtime Also Is Impliedly Preempted by FLSA Section 16(b).

In addition to being expressly preempted by Section 16(b) of the FLSA, Plaintiff's attempt to assert his state law claim for overtime as an opt-out class action is impliedly preempted because it conflicts with the FLSA's opt-in requirement.[3] State law claims are impliedly preempted where, as here, the pursuit of the state law claims would conflict with the policy embodied in federal law, or where it would "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 98 (1992) (citation omitted) (holding that the federal OSHA statute preempted any state law establishing occupational health and safety standards in areas covered by OSHA). A federal law will preempt a state law even where the statutes share the same goal, if the state law "interferes with the *methods* by which the federal statute was intended to reach this goal." Gade, 505 U.S. at 88 (emphasis added).

Under the doctrine of implied preemption, New York federal and state courts have repeatedly held that even where a federal statute has no express provision regarding the preemption of state law remedies, those state law remedies are preempted by federal law if they

---

[3]  Chase does *not* contend that the FLSA preempts the New York Labor Law or Plaintiff's own individual claim for overtime under that statute. Thus, cases such as Overnite Transp. Co. v. Tianti, 926 F.2d 220, 222 (2d Cir. 1991), which stand for the unremarkable proposition that that the FLSA does not preempt the substantive overtime provisions of state wage laws, are inapposite. Plaintiff's substantive state law overtime claim is not preempted; rather, it is his attempt to use Rule 23's opt-out procedure to litigate the overtime claims of absent class members without their written consent that is preempted because it conflicts with the method Congress has mandated for the adjudication of overtime claims on a group basis.

conflict with the policies embodied in the federal law.  The Second Circuit's decision in <u>Clean Air Mkts. Group v. Pataki</u>, 338 F.3d 82 (2d Cir. 2003), demonstrates the application of this doctrine.  There, the court found that the Clean Air Act preempted New York's Air Pollution Mitigation Law ("APML").  Through the Clean Air Act, Congress set up an emission allocation system where utilities were granted a set number of emission allowances annually, which they could sell to "any other person who holds such allowances."  <u>Id.</u> at 84.  New York State passed the APML, which included a provision that required states that sold their emission allowances to certain "upwind" states to pay New York an amount of money equal to the sale price.  <u>Id.</u> at 85. The Second Circuit concluded that this particular provision of the state law was preempted:

> Even where federal and state statutes have a common goal, a state law will be preempted 'if it interferes with the methods by which the federal statute was designed to reach this goal.'  There can be no doubt that [the APML] interferes with the method selected by Congress for regulating SO2 emissions.

<u>Id.</u> at 87 (citing <u>International Paper Company v. Ouellette</u>, 479 U.S. 481, 494 (1987)).

Courts have previously invoked the doctrine of implied preemption in holding that the FLSA preempts state law remedies.  For example, in <u>Berry v. 34 Irving Place Corp.</u>, 4 Wage & Hour Case. (BNA) 564, 564 (S.D.N.Y. 1944), the plaintiff prevailed on his FLSA claims and sought to recover an award of interest under New York state law.  Looking beyond the plain language of the FLSA, the court looked to the intent of Congress in promulgating the liquidated damages remedy under the FLSA.  Finding that liquidated damages were intended to compensate workers for the loss of the use of their unpaid wages, the court held that the plaintiff could not recover the state-law remedy of interest.  As the court explained:

> The statutory provision of the Fair Labor Standards Act for liquidated damages is designed to compensate for damages resulting from the retention of the workman's pay . . . which otherwise might be 'too obscure and difficult of proof.'  Nothing in the statute suggests anything but a legislative intention to provide a uniform rule as to such damages, a rule in no way dependent upon the varying standards and provisions of the several states.

<u>Id.</u>  <u>See also</u> <u>Brooklyn Sav. Bank v. O'Neill</u>, 324 U.S. 697, 715 (1945) (finding that Congress must have intended to preclude the recovery of interest when it enacted the FLSA since an award

of liquidated damages serves a similar purpose); Choimbol v. Fairfield Resorts, Inc., No. 05-cv-463, 2006 WL 2631791, at *5 (E.D. Va. Sept. 11, 2006) ("[I]t is Congress' clear intent that the FLSA be the sole remedy available to employees for enforcement of whatever rights he may have under the FLSA") (internal quotations omitted).

It cannot be disputed that the FLSA has preemptive effect over state laws that conflict with it. Plainly, for example, the FLSA would preempt a state law that purported to permit a *lower* minimum wage than that provided by the FLSA. Likewise, the FLSA would preempt a state law that permitted employers to avoid paying overtime to employees until they had worked at least *50* hours in a workweek. Such hypothetical state laws would be impliedly preempted because they would conflict with federal law. See Schneidewind, 485 U.S. at 299-300. Similarly, the FLSA implicitly preempts a plaintiff's ability to bring state law overtime claims as opt-out class actions because "allowing both the state law and FLSA claims to proceed in the same action 'would essentially nullify Congress's intent in crafting Section 216(b) and eviscerate the purpose of Section 216(b)'s opt-in requirement.'" Ellis v. Edward D. Jones & Co., L.P., 527 F. Supp. 2d 439, 452 (W.D. Pa. 2007).

Congress had two chief purposes when, in response to a flood of "representative" litigation, it amended the FLSA to preclude an employee's rights from being adjudicated, absent the employee's "consent in writing," in any action seeking to recover the liability prescribed by the FLSA. 29 U.S.C. § 216(b). Congress added this written consent requirement "for the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers of the burden of representative actions." Hoffman-LaRoche, 493 U.S. at 173. See also Ellis v. Edward D. Jones & Co., L.P., 527 F. Supp. 2d 439, 450 (W.D. Pa. 2007) ("Congress sought to ensure that "absent individuals would not have their rights litigated without their input or knowledge'") (citation omitted); Cameron-Grant v. Maxim Healthcare Servs., Inc., 347 F.3d 1240, 1248 (11th Cir. 2003) (Congress created the "opt-in" language to "prevent large group actions, with their vast allegations of liability, from being brought on behalf of employees who had no real involvement in, or knowledge of, the lawsuit."). This limitation was meant to

curb the "excessive litigation spawned by plaintiffs lacking a personal interest in the outcome" of lawsuits under the FLSA.  Hoffman-LaRoche, 493 U.S. at 173.  Indeed, the very text of the 1947 amendments to the FLSA reflects Congress' firmly-held view that unless plaintiffs' ability to aggregate claims were limited by the opt-in requirement, "the courts of the country would be burdened with excessive and needless litigation and champertous practices would be encouraged."  29 U.S.C. § 251(a)(7).

Thus, unlike class actions under Rule 23, individuals are not bound by the judgment in a collective action unless they have *affirmatively* opted into the action.  Compare LaChapelle, 513 F.2d at 289 (under the FLSA, "no person will be bound by or may benefit from judgment unless he has affirmatively 'opted into' the class; that is, given his written, filed consent"), with Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 176 (1974) ("Rule [23] was intended to insure that the judgment, whether favorable or not, would bind all class members who did not request exclusion from the suit").  See also LaChapelle, 513 F.2d at 288 ("[t]here is a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by FLSA s 16(b) . . . . These two types of class actions are mutually exclusive and irreconcilable"); Woodard v. Fedex Freight East, Inc., No. 06-1968, 2008 WL 471552, at *11 (M.D. Pa. Feb. 19, 2008) ("Rule 23 is the antithesis of § 216(b)").

Against this historical backdrop, numerous courts have recognized that allowing plaintiffs to circumvent the opt-in requirements of Section 16(b) by litigating state law overtime claims as opt-out class actions would undermine Congress's intent in creating Section 16(b).  See, e.g., De La Cruz v. Gill Corn Farms, No. 03-1133, 2005 WL 5419056 (N.D.N.Y. Jan. 25, 2005) (Congress's intent in requiring an opt-in scheme for the litigation of overtime claims "would be thwarted if a plaintiff were permitted to back door the shoehorning in of unnamed parties through the vehicle of calling upon similar state statutes that lack such an opt-in requirement"); Woodard, No. 03-1133, 2008 WL 471552, at *11 ("simultaneous prosecution of Mr. Woodard's FLSA collective action and [state law] class action will frustrate congressional intent and circumvent § 216(b)'s opt-in requirement"); Evancho v. Sanofi-Aventis U.S., Inc., No.

8

07-2266, 2007 WL 4546100 (D.N.J. Dec. 19, 2007) ("Plaintiffs . . . are not permitted to

'circumvent the opt-in requirement and bring unnamed parties into federal court by calling upon

state statutes similar to the FLSA'"); Williams v. Trendwest Resorts, Inc., No. 05-0605, 2007

WL 2429149, at *4 (D. Nev. Aug. 20, 2007) ("It would be inappropriate to permit Plaintiffs'

attempt to circumvent the restrictive opt-in requirements of the FLSA"); Hyman v. WM Fin.

Servs., Inc., No. 06-4038, 2007 WL 1657392, *6 (D.N.J. June 7, 2007) (to condone plaintiffs'

litigation tactic of asserting a Rule 23 class action claim under state law that "mimic[s]" their

FLSA claim would defeat Congress's intent "to ensure that only those plaintiffs with a truly

vested interest in the outcome of an overtime suit actually proceed with the action"); Otto v.

Pocono Health Sys., 457 F. Supp. 2d 522, 524 (M.D. Pa. 2006) ("To allow an Section 216(b)

opt-in action to proceed accompanied by a Rule 23 opt-out state law class action claim would

essentially nullify Congress's intent in crafting Section 216(b)"); Moeck v. Gray Supply Corp.,

No. 03-1950, 2006 WL 42368, *5 (D.N.J. Jan. 6, 2006) ("Allowing Plaintiff Moeck to

circumvent the opt-in requirement and bring unnamed parties into federal court by calling upon

state statutes similar to the FLSA would undermine Congress's intent to limit these types of

claims to collective actions"); Edwards v. City of Long Beach, 467 F. Supp. 2d 986, 993 (C.D.

Cal. 2006) (opt-out class for state law overtime claims "would frustrate the purpose of requiring

plaintiffs to affirmatively opt-in to § 216(b) collective actions"); McClain v. Leona's Pizzeria,

Inc., 222 F.R.D. 574, 578 (N.D. Ill. 2004) (allowing plaintiff to certify an opt-out class for state

law overtime claims "would undermine Congress's intent to limit these types of claims to

collective actions"); Harper v. Yale Int'l Ins. Agency Inc., No. 03 C 3789, 2004 WL 1080193, at

*5 (N.D. Ill. May 12, 2004) ("Plaintiffs . . . have arguably subverted congressional intent in

creating the FLSA opt-in procedure by choosing to seek class certification of their [state law

overtime] claims instead of pursuing an FLSA collective action."); Rodriquez v. The Texan, Inc.,

No. 01 C 1478, 2001 WL 1829490, at *2 (N.D. Ill. Mar. 7, 2001) (Congress's intent behind the

FLSA's opt-in requirement "would be thwarted if a Plaintiff were permitted to back door the

shoehorning in of unnamed parties through the vehicle of calling upon similar state statutes that lack such an opt-in requirement").

Chase acknowledges that some district courts have permitted Rule 23 class actions for state wage violations to proceed simultaneously with FLSA collective actions. See, e.g., Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363 (S.D.N.Y. 2007); Ansoumana v. Gristede's Operating Corp., 201 F.R.D. 81, 85-87, 93-96 (S.D.N.Y. 2001).  Significantly, however, most of these courts never addressed the incompatibility of Section 16(b) and opt-out class actions for overtime or whether simultaneous prosecution of both would undermine Congress's intent.  As one district court recently explained, the fact that some courts have allowed Rule 23 class actions for state overtime violations to proceed together with FLSA collective actions should not be considered a rejection, *sub silentio*, of arguments that those courts never considered.  Woodard, 2008 WL 471552, at *10.  See also Webster v. Fall, 266 U.S. 507, 511 (1925) ("Questions . . . neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents").

To the extent some courts have rejected the argument that using the procedural vehicle of Rule 23 to litigate opt-out class actions for overtime conflicts with Section 16(b), those courts have done so without fully evaluating the effect of adjudicating class members' overtime rights on an opt-out basis and have given little more than a passing reference to the legislative history or Congress's intent behind FLSA Section 16(b).  Indeed, the Woodard court made the following observation about the cases running contrary to Chase's position:

> [Those decisions], which actually considered and rejected the notion that an FLSA opt-in collective action in incompatible with a state law opt-out class action, are unpersuasive.  Those courts generally resolved this issue in conclusory fashion, reasoning, like [plaintiff] that the FLSA and state wage and hour laws are separate statutes providing separate remedies; there was little or no consideration of Congress's intent.

Woodard, 2008 WL 471552, at *10.

That Plaintiff's attempt to use Rule 23 to litigate state law overtime claims on an opt-out basis conflicts with Congress's intent in passing FLSA Section 16(b) becomes apparent when

one considers the real-life consequences such claims would have on the rights of Chase and

absent class members.  By creating the written consent requirement of FLSA Section 16(b),

Congress afforded workers with a substantive protection of their overtime rights.  See Secretary

of Labor Amicus Letter Brief in Long John Silver's Rests., Inc. v. Cole, No. 05-CV-3039

(D.S.C. Filed Dec. 13, 2005) ("in the Secretary's view, the right to participate in a collective

action only upon submission of one's written consent is a substantive right");[4] Ellis, 527 F. Supp.

2d at 455 (the rights Congress created when it established the FLSA's opt-in requirement "are

clearly substantive rights").  Likewise, Congress afforded employers a substantive protection by

"freeing employers of the burden of representative actions."  Hoffman-LaRoche, 493 U.S. at

173.  Plaintiff's attempt to use Rule 23 to litigate duplicative state law overtime claims on an opt-

out basis would deprive absent class members (and Chase) of the substantive protections of

Section 16(b) because allowing Plaintiff to proceed in such a manner would result in class

members having their FLSA overtime rights adjudicated without ever having given their written

consent.

        Under Rule 23, any class member who does not affirmatively request exclusion from a

suit is bound by any judgment in that suit.  Fed. R. Civ. P. 23(c)(3); Eisen, 417 U.S. at 176.

Therefore, if Plaintiff were permitted to litigate his state law overtime claim as a Rule 23 class

action, and should he be determined to be exempt or otherwise not entitled to overtime pay under

New York law, that determination would be binding not only on Plaintiff, but also on a

hypothetical absent class member, Jane Doe, who failed to opt out of the action because she

never received the class notice or perhaps mistook it for "junk mail."  By not having opted out of

the action, Ms. Doe clearly would be barred by *res judicata* or *collateral estoppel* from later

asserting an overtime claim against Chase under New York's Labor Law.  In addition, because

any overtime claim under the FLSA would be based on the same facts and same legal standards

---

[4]    The Secretary's Amicus Letter Brief is available at http://www.dol.gov/sol/media/briefs/LJSbrief-12-
13-2005.htm.  The brief is hereinafter referred to as "DOL Amicus Brief."

as Plaintiff's state law overtime claim,[5] Ms. Doe also would be barred from asserting an *FLSA overtime claim* against Chase even though she never gave consent to opt into the action.

"Under New York's transactional approach to *res judicata*, once a claim is brought to final conclusion, all other claims arising out of the same transactions are barred, even if based on a different theory or seeking a different remedy." Small v. Lorillard Tobacco Co., 679 N.Y.S.2d 593, 601 (App. Div. 1st Dep't 1998). Thus, adjudication of an *absent* class member's state law overtime claim here also would extinguish his or her overtime rights under the FLSA. See, e.g., Gonzalez v. City of New York, 396 F. Supp. 2d 411 (S.D.N.Y. 2005) (discrimination claims of police officers barred by *res judicata* where Latino Officers Association previously brought class action involving the same facts and where plaintiff officers were absent members of that class).

The threat of extinguishing FLSA rights by adjudicating duplicative state law claims was addressed in Chao v. A-One Med. Servs., Inc., 346 F.3d 908, 921-22 (9th Cir. 2003), in which the Department of Labor sued an employer under the FLSA for unpaid overtime on behalf of eight former employees. Id. at 911. The Ninth Circuit Court of Appeals affirmed the dismissal of the FLSA claim of one of the eight employees because that employee had previously litigated a state law claim for overtime against her employer. Id. at 923. The court found that the employee's FLSA claim was barred by *res judicata* because the FLSA claim was based on the same operative facts as the previously-litigated state law claim. Id. at 921-23. See also Molina v. Sea-Land Servs., Inc., 2 F. Supp. 2d 180, 184-85 (D.P.R. 1997) (barring plaintiff's FLSA claim because an earlier state court judgment on plaintiff's state wage claims 'has preclusive effect over the F.L.S.A. cause of action"); Tran v. Le French Baker, Inc., No. C-94-0482, 1995 WL 374342, at *2 (N.D. Cal. June 14, 1995) (plaintiff previously awarded overtime pay under state law through state administrative proceeding was collaterally estopped from pursuing FLSA

---

[5]  The regulation that purports to require overtime pay under New York law expressly incorporates the FLSA and its exemptions. See N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 (requiring overtime pay "in the manner and methods and subject to the exemptions of Section 7 and Section 13 of [the FLSA] . . . )." Indeed, in his state law overtime claim, Plaintiff seeks premium overtime pay for the same alleged hours of work, based on identical alleged facts, and based on the same legal standards as his FLSA claim. (Compl. ¶¶ 17-18, 36, 42, 43, 50, 51).

claim, even though state labor commissioner had not had jurisdiction to hear FLSA claim in that proceeding).

At least one court in this district expressly recognized that the adjudication of absent class members' state law overtime claims under Rule 23 would have preclusive effect on their FLSA rights.  See Klein v. Ryan Beck Holdings, Inc., 06-cv-3460, 2007 WL 2059828, *7 (S.D.N.Y. July 13, 2007).  But Klein wrongly concluded that absent class members could simply avoid the consequences of *res judicata* by opting out of the Rule 23 class action.  Id.  In addition to ignoring the reality that very few people ever opt out of class actions,[6] the suggestion that an absent class member be required to opt out of an action to protect his or her FLSA rights flies in the face of the FLSA, the case law interpreting it, and the Department of Labor's position that employees have a right not to have their FLSA claims litigated without their written consent. See, supra, at 4-11.  Perhaps the best statement of the flaw in the Klein court's reasoning comes from Kakani v. Oracle Corp., No. 06-6493, 2007 WL 1793774 (N.D. Cal. Jun. 19, 2007), in which the court denied a motion to preliminarily approve a settlement because it purported to require absent class members to opt out in order to protect their FLSA rights:

> Under no circumstances can counsel collude to take away FLSA rights including the worker's right to control his or her own claim without the burden of having to opt out of someone else's lawsuit.  Workers who voluntarily send in a claim form and affirmatively join in the action, of course, can be bound to a full release of all federal and state rights.  *But [it] is unconscionable to try to take away the FLSA rights of all workers, whether or not they choose to join in affirmatively.*

Kakani, 2007 WL 1793774, at *7 (emphasis added).  See also Ellis, 527 F. Supp. 2d at 455 ("When parallel actions are brought simultaneously under both the FLSA and Fed. R. Civ. P. 23,

---

[6] According to a relatively recent study, less than three percent of class members, on average, opt out of employment class actions under Rule 23.  See Theodore Eisenberg and Geoffrey P. Miller, The Role Of Opt Outs And Objectors In Class Action Litigation: Theoretical And Empirical Issues, 57 Vand. L. Rev. 1529, 1549 (2004).  See also Muecke v. A-Reliable Auto Parts and Wreckers, Inc., No. 01 C 2361, 2002 WL 1359411 at *2 n.2 (N.D. Ill. June 21, 2002) ("In the Court's experience, few if any persons who receive notice of a class action opt out; though one could argue that this is because the vast majority of notice recipients make an affirmative decision to stay in the case, it is just as likely that the tiny number of opt-outs occurs because recipients ignore the notice (believing it to be 'junk mail') or once seeing it, do not bother to read it.")

13

a decision on the Rule 23 action has 'res judicata effect on any unnamed class members who did not opt out,' even though Congress's 'clear aim' in amending the FLSA 'was to ensure that each employee *expressly consents* to any collective adjudication of his or her rights under the FLSA'") (citation omitted) (emphasis added).   In short, the notion of requiring an absent class member to affirmatively opt *out* of an action to protect his or her FLSA rights is precisely what Congress sought to preclude when it created the opt-in requirement of Section 16(b). Accordingly, that section preempts Plaintiff's attempt to use Rule 23 to adjudicate the overtime rights of absent class members without their written consent.

Chase anticipates that Plaintiff may rely on the FLSA's narrow "saving clause," 29 U.S.C. § 218(a), as somehow preserving his right to proceed with a state law claim for overtime as an opt-out class action under Rule 23.  The FLSA's saving clause, however, does no such thing.  Rather, the saving clause merely contains a *limited* preservation of state rights, stating only that a state may enact a law with "a minimum wage higher than the minimum wage under [the FLSA] or a maximum workweek lower than the maximum workweek established under [the FLSA]," or higher standards relating to the employment of child labor.  29 U.S.C. § 218(a).  See also Ellis, 527 F. Supp. 2d at 450 ("The terms of the saving clause are clear and narrowly drawn: they merely establish a wage and hour 'floor' above which the states are free to rise").  Chase does not dispute these points, which are wholly irrelevant to the instant motion.  But nothing in the saving clause's narrow language supports an individual's broad right to proceed with overtime claims on an opt-out basis when proceeding in such a fashion would effectively destroy the written consent requirement Congress wrote into Section 16(b).  See Ellis, 527 F. Supp. 2d at 451 ("the presence of a limited saving clause should not be read to obviate FLSA's preemptive implications"); Woodard, 2008 WL 471552, at *11 ("A saving clause that covers a narrow range of state law . . . does not eliminate the possibility that other state laws, or even the laws "saved,"

14

will conflict with federal law and therefore frustrate Congress's intent").[7]

In sum, Plaintiff's attempt to use Rule 23 to adjudicate the overtime rights of absent class members on an opt-out basis would result in the adjudication of absent class members' *FLSA rights* without their consent. This is exactly what Congress sought to prohibit by enacting FLSA Section 16(b). To the extent Plaintiff's state law overtime claim is asserted as a Rule 23 class action, it is impliedly preempted by Section 16(b) and should be stricken or dismissed.

### III.  LITIGATING PLAINTIFF'S STATE LAW OVERTIME CLAIM UNDER RULE 23 WOULD VIOLATE THE RULES ENABLING ACT BY ABRIDGING SUBSTANTIVE RIGHTS OF ABSENT CLASS MEMBERS AND CHASE.

Permitting Plaintiff to use Rule 23 to proceed with his state law overtime claim on an opt-out class basis also would violate the Rules Enabling Act ("REA"), which prohibits the application of a rule of practice and procedure where such application would "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b).

Rule 23 does not create any substantive rights and is limited in its application by the REA. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 612-13 (1997) ("[We are] mindful that Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act"). See also A. Conte & H. Newberg, 1 Newberg on Class Actions § 1:2 (4th ed. 2002) ("[I]t should be recognized that a class action is a procedural device. . . . Significantly, procedural Rule 23 cannot be construed to . . . abridge, modify, or enlarge any substantive right") (citing the REA). FLSA Section 16(b), on the other hand, creates substantive rights in both employees and employers. The United States Department of Labor, the federal agency charged with interpreting and enforcing the FLSA, has explained that this is a substantive protection for employees:

> Section 16(b) of the FLSA unambiguously provides employees the
> right not to have their statutory claims litigated without their written
> consent. . . . The advance written consent requirement, as

---

[7]  The Supreme Court has cautioned that it would "decline to give broad effect to savings clauses where doing so would upset the careful regulatory scheme established by federal law." United States v. Locke, 529 U.S. 89, 106 (2000) ("a savings clause should not be read more broadly than is indicated by its placement and text").

> distinguished from procedural provisions in the FLSA, goes to an
> employee's fundamental right not to be included as a plaintiff in a
> lawsuit or arbitration.  Thus, in the Secretary's view, the right to
> participate in a collective action only upon submission of one's written
> consent *is a substantive right*.

DOL Amicus Brief (emphasis added).  Likewise, Congress granted employers the substantive

right to defend claims for unpaid overtime only against individuals who bring or affirmatively

opt into an action.  See, e.g., Hoffman-LaRoche, 493 U.S. at 173 (FLSA was enacted for "the

purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right

and freeing employers of the burden of representative actions").  As one court recently stated, the

rights Congress created in employers and employees when it created the FLSA's opt-in

requirement "are clearly substantive rights."  Ellis, 527 F. Supp. 2d at 455.  See also De Asencio

v. Tyson Foods, Inc., 342 F.3d 301, 310 (3d Cir. 2003) ("[t]he aggregation of claims, particularly

as class actions, profoundly affects the substantive rights of the parties to the litigation").

Rule 23's authors recognized that, as a procedural rule, its opt-out provisions must give

way to the substantive rights Congress created in Section 16(b).  See Fed R. Civ. P. 23 Adv.

Comm. Notes ("The present provisions of 29 U.S.C. § 216(b) are not intended to be affected by

Rule 23, as amended").  In the present case, the Court should not allow Rule 23, a *procedural*

rule, to be applied in such a way that it would abridge the *substantive* rights of both absent class

members and Chase.  As explained above, any determinations by this Court as to Plaintiff's

rights to overtime wages under New York law would, through *res judicata* and *collateral*

*estoppel*, necessarily determine the same rights under the FLSA as to every absent class member

who did not opt out of the action, even without their written consent.  Likewise, permitting

Plaintiff to litigate his overtime claims as an opt-out class action under Rule 23 would abridge

the substantive right Congress conferred upon employers like Chase not to litigate overtime

claims against absent class members who have never consented to participating in the suit.  To

allow Plaintiff to use Rule 23 to eviscerate these substantive rights of absent class members and

Chase this way would violate the REA.  See Ellis, 527 F. Supp. 2d at 460 ("where the state law

claims merely parallel those made under the FLSA," the REA prohibits simultaneous
prosecution of state overtime claims under Rule 23 and FLSA collective actions).

Chase acknowledges that a handful of courts have not accepted the argument that the
REA precludes the use of Rule 23 to assert overtime claims on behalf of absent class members
on an opt-out basis. See, e.g, Guzman v. VLM, Inc., 07-cv-1126, 2008 WL 597186, at *8-9
(E.D.N.Y. Mar. 2, 2008); Lehman v. Legg Mason, Inc., No. 1:06-CV-02484, 2007 WL 2768519,
at *4 (M.D. Pa. Sept. 20, 2007); Westerfield v. Washington Mut. Bank, No. 06-2817, 2007 WL
2162989, at *1-3 (E.D.N.Y. July 26, 2007); Farhy v. Janney Montgomery Scott, LLC, No. civ.
A. 06-3202; Civ. A. 06-3969, 2007 WL 1455764, at *1 (E.D. Pa. Apr. 26, 2007); Neary v.
Metropolitan Prop. & Cas. Ins. Co., 472 F. Supp. 2d 247, 250-52 (D. Conn. 2007). Those courts,
however, all afforded the issue very limited analysis. Indeed, when defendants in the past few
years first started asserting the REA as a basis for barring state law class action overtime claims,
courts typically rejected the argument out-of-hand with little, if any, analysis, tending to reject
the REA argument based on little more than a lack of precedent on the issue. In contrast to those
decisions, the Western District of Pennsylvania recently undertook a thorough examination of
the issue, recognizing the impropriety of dismissing the issue out-of-hand without sufficient
analysis, and ultimately concluded that the REA provided a compelling reason to dismiss
plaintiffs' opt-out class claims for overtime. Ellis, 527 F. Supp. 2d at 456-61. The court
criticized those decisions that had rejected the REA argument based upon "perfunctory analysis
at best, much of it ignoring that fact that if *lack* of precedent were binding the law neither would
nor could evolve and the courts' function, to the extent that they could function at all, would be
essentially ministerial." Id. at 456.

Chase respectfully asks this Court to follow the Ellis court's reasoning here. That
reasoning leads to an inescapable conclusion: permitting Plaintiff to use Rule 23 to litigate his
overtime claims on behalf of an opt-out class would abridge the substantive rights Congress
conferred on both absent class members and employers when it added the written consent
requirement to the FLSA. The REA precludes such an application of Rule 23.

17

**IV.    AS A MATTER OF LAW, PLAINTIFF CANNOT SATISFY THE REQUIREMENTS FOR MAINTAINING A CLASS ACTION UNDER RULE 23.**

The Court also should dismiss or strike Plaintiff's state law class claim for overtime because, on its face, Plaintiff's claim fails to meet several of the requirements for maintaining a class action under Rule 23.  Rule 23(a) imposes four threshold requirements on putative class actions: numerosity, commonality, typicality, and adequacy of representation.  Denney v. Deutsche Bank, AG, 443 F.3d 253, 267 (2d Cir. 2006).  Rule 23(b)(3) imposes two additional requirements: "Common questions must 'predominate over any questions affecting only individual members'; and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.' " Id.  Here, Plaintiff cannot meet the requirements of numerosity, adequacy of representation, or superiority.

**A.  It Is Not Possible For Plaintiff To Establish That His Proposed Class Is So Numerous That Joinder Of Claims Is Impracticable.**

A party seeking class certification must establish that the proposed class is so numerous that joinder of all members is impracticable.  Fed. R. Civ. P. 23(a)(1).

> Rule 23(a)(1) is not a numerosity requirement in isolation. The words of this test, "the class is so numerous," are immediately followed by the limiting phrase, "that joinder of all members is impracticable." . . . In reality then, Rule 23(a)(1) is an impracticability of joinder requirement, of which class size is an inherent consideration within the rationale of joinder concepts.

A. Conte and H. Newberg, 1 Newberg on Class Actions § 3:3 (4th ed. 2002).  See also Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993) ("Determination of practicability depends on all the circumstances surrounding a case, not on mere numbers.")

Here, regardless of the size of the putative class, Plaintiff cannot show that joinder is impracticable.  In Count I of his Complaint, Plaintiff specifically seeks to invoke the collective action device of FLSA Section 16(b) by asserting a claim on behalf of loan officers employed by Chase in New York.  Thus, to the extent *any* group-wide adjudication of Plaintiff's claims would

be appropriate in this case,[8] Section 16(b) provides a mechanism that would allow class members to assert their own overtime claims by voluntarily joining the action. The availability of this voluntary joinder device created by federal statute negates any possible argument that joinder is impracticable. See Bartleson v. Winnebago Industries, Inc., 219 F.R.D. 629, 639 (N.D. Iowa 2003) (certification of state overtime law claim denied; practicality of joinder shown by fact that 21 people opted into the plaintiff's FLSA collective action). Indeed, Plaintiff cannot argue that joinder under Section 16(b) is available and appropriate in this case while, at the same time, arguing that joinder is impracticable.

### B. Plaintiff's Decision To Waive Liquidated Damages Under The NYLL On Behalf Of The Class Renders Him An Inadequate Class Representative.

Before certifying a class action, a court must be satisfied that the representative plaintiff will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). This requirement serves to uncover any potential conflicts of interest between the named plaintiff (and his or her counsel) and the proposed class. Amchem Prods., 521 U.S. at 626. Here, Plaintiff and his counsel have rendered themselves inadequate class representatives by purporting to waive, on behalf of all absent class members, any right to liquidated damages under the NYLL.

Section 901 of the New York Civil Practice Law and Rules ("CPLR") prohibits the use of a class action under a statute that provides for recovery of a penalty or a minimum measure of recovery unless that statute specifically authorizes the recovery of such penalty in a class action. The NYLL, among other remedies, provides for the assessment of liquidated damages. N.Y. Lab. Law § 198(a-1). Because these damages constitute a penalty within the meaning of CPLR § 901(b), and because the NYLL contains no specific authorization for a class action to seek such damages, Plaintiff may not maintain his NYLL claim as a class action. Carter v. Frito-Lay, Inc.,

---

[8]   Chase does not concede that this action should proceed as a collective action under FLSA Section 16(b) and reserves all arguments in that regard. But assuming, *arguendo*, that any group adjudication is appropriate in this matter, the fact that Plaintiff is seeking to join each and every class member by asserting a collective action claim under FLSA Section 16(b) negates any possible argument that joinder is impracticable.

425 N.Y.S.2d 115, 116 (App. Div. 1st Dep't 1980) (barring NYLL class action under CPLR

§ 901(b) because liquidated damages are a penalty), aff'd, 419 N.E.2d 1079 (N.Y. 1981).

Plaintiff, however, has attempted to avoid the bar of Section 901(b) by purportedly

waiving, on behalf of himself and all absent class members, any claim for liquidated damages

under the NYLL.  (Compl., ¶ 52).  Assuming, *arguendo*, that Plaintiff could waive liquidated

damages under the NYLL,[9] Plaintiff and his counsel clearly cannot waive such damages on

behalf of absent class members and still serve as adequate representatives of a class.  By waiving

liquidated damages, Plaintiff and his counsel are depriving the putative class members of the

opportunity to seek an additional 25 percent of the relief available under state law with no

countervailing benefit to the putative class or even to Plaintiff himself.  Rather, the sole benefit

of this gambit is to aggregate a far greater number of claims under the opt-out class action

procedure and, as a result, enable his counsel to seek higher attorneys' fees while class members

unknowingly waive their rights to seek liquidated damages.[10]

Judge McAvoy of the Northern District of New York recognized this precise point while

denying a motion to certify a NYLL claim for overtime:

> With respect to the proposed class members, . . . the Court feels that
> their rights are not adequately protected by employing a class
> procedure whereby they will automatically waive their right to pursue
> liquidated damages by failing to opt out.  In other words, this Court

---

[9]  Chase's position is that Plaintiff's purported waiver is ineffective because liquidated damages under the NYLL are mandatory and cannot be waived.  Although some courts have held that the class action bar of CPLR § 901(b) can be avoided by waiving liquidated damages, those cases all emanate from Super Glue Corp. v. Avis Rent a Car Sys., Inc., 517 N.Y.S.2d 764 (App. Div. 2d Dep't 1987), a case in which the court found that a *discretionary* penalty could be waived to avoid the class action bar under CPLR § 901(b).  Here, however, the NYLL provides that upon a "willful" failure to pay wages due, "the court *shall* allow . . . an additional amount as liquidated damages equal to twenty-five percent of the total amount of the wages found to be due."  N.Y. Lab. Law § 198(1-a) (emphasis added).  See Rubin v. Nine West Group, Inc., No. 0763/99, 1999 WL 1425364, at *5 (N.Y. Sup. Ct. Nov. 3, 1999) (legislature's use of word "shall" in Donnelly Act's treble damages provision renders such damages "mandatory").  Since Plaintiff has alleged that Chase's failure to pay overtime was "willful," (Compl., ¶ 42), liquidated damages under the NYLL are mandatory and, thus, his purported waiver is ineffective.

[10]  Rule 23 class actions typically have much higher participation rates than opt-in collective actions under FLSA Section 216(b).  De Asencio, 342 F.3d at 310 (3d Cir. 2003) ("Under most circumstances, the opt-out class will be greater in number, perhaps even exponentially greater").

> does not believe that someone's rights should be waived by inaction; that is, by doing nothing. We must not ignore the realities of class actions. Most people do not read, let alone understand, class action notices they receive in the mail.
>
> * * *
>
> The issue is even more complicated if there are conditions in the notice about waiving statutory penalties-subjects about which the recipients of any class notice are likely to know nothing about, let alone understand. The Court finds it hard to believe that the proposed class members would be knowingly and voluntarily relinquishing their rights to seek liquidated damages by failing to opt-out of a New York Labor Law class action. Yet, that is exactly what would happen if the Court were to permit the Labor Law claims to proceed as a class claim.

De La Cruz, 2005 WL 5419056, at *2.

Other courts, including this Court in the context of class claims for overtime, have found plaintiffs' adequacy as class representatives to be substantially compromised when they and their counsel are willing to waive class members' statutory right to liquidated damages or other mandatory penalties. See, e.g., Foster v. Food Emporium, No. 99-cv- 3860, 2000 WL 1737858, at *3 n.3 (S.D.N.Y. Apr. 26, 2000) ("[A]ttempts by plaintiffs to get around CPLR 901(b) by waiving the liquidated damages remedy have been rejected by courts as undermining putative lead plaintiffs' ability to represent others who have a statutory right to the remedy"). Cf. Myers v. Hertz Corp., No. 02-4325, 2007 WL 2126264, at *7 (E.D.N.Y. July 24, 2007) (recognizing that waiver of entitlement to recover liquidated damages under the NYLL is a "significant sacrifice"). By waiving such rights, Plaintiff and his counsel have rendered themselves inadequate class representatives.

### C. As a Matter of Law, an Opt-Out Class Action Under Rule 23 Is Not Superior To Other Available Methods For Adjudication.

Presumably, Plaintiff will seek class certification under Rule 23(b)(3) for his class action claims for monetary relief. See Barnes v. Am. Tobacco Co., 161 F.3d 127, 142 (3d Cir. 1998) (Rule 23(b)(2) certification is only appropriate in actions "seeking primarily injunctive or corresponding declaratory relief"). A court may certify a class under Rule 23(b)(3) only if it finds that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). See also Mike v. Safeco Ins. Co. of

<u>Am.</u>, 223 F.R.D. 50, 52 (D. Conn. 2004) (finding class action was not the superior method of adjudicating the claims in the complaint).  In evaluating whether a class action is superior, a court should consider, *inter alia*, "the interest of the members of the class in individually controlling the prosecution or defense of separate actions" and "the difficulties likely to be encountered in the management of a class action." <u>Fogarazzao v. Lehman Bros., Inc.</u>, 232 F.R.D. 176, 182 (S.D.N.Y. 2005) (citing Fed. R. Civ. P. 23(b)(3)).  To find superiority, a court must determine that <u>all</u> other methods of resolving the issues in the case are inferior to a Rule 23 class action.  <u>See</u> <u>Schwartz v. Dana Corp./Parish Div.</u>, 196 F.R.D. 275, 285 (E.D. Pa. 2000).

Here, an opt-out class action is not superior to another available method for adjudication of that claim:  an opt-in collective action under Section 16(b) of the FLSA.  As discussed above, permitting Plaintiff's state law overtime claim to go forward under Rule 23 would thwart Congressional intent and abridge the substantive rights of absent class members and Chase to have FLSA overtime rights adjudicated only on behalf of consenting class members.  <u>See</u> <u>Edwards</u>, 467 F. Supp. 2d at 993 (superiority of Rule 23 class action was lacking where "allowing both a § 216(b) collective action and a Rule 23 class action to proceed would frustrate the purpose of requiring plaintiffs to affirmatively opt-in to § 216(b) collective actions."); <u>McClain</u>, 222 F.R.D. at 578 (finding a state law class action "is not the superior manner in which to proceed" because "[h]olding otherwise would undermine Congress's directive that FLSA collective actions are limited to those parties who opt in to the action").  In contrast, requiring individuals who wish to participate to affirmatively opt into the suit affords these individuals greater control over their participation in the litigation than would an opt-out action.  As one court explained:

> [T]he FLSA suit provides a means of participation for individuals who truly wish to join the suit, while requiring no action from those who do not wish to join.  By contrast, a Rule 23 class requires that a potential class member take affirmative action not to be bound by the judgment.

<u>Leuthold v. Destination America</u>, 224 F.R.D. 462, 469-70 (N.D. Cal. 2004).  <u>See also</u> <u>Muecke</u>, 2002 WL 1359411 at *2 (because class members have an opportunity to decide whether to opt

into the FLSA collective action, "it makes no real sense to the Court to certify a class that will *automatically* include all of the employees unless they opt out") (emphasis in original).

Permitting Plaintiff to pursue his state law overtime claim as an opt-out action also would create challenges with respect to manageability of the action. For example, asking potential class members – who are not attorneys, but laypersons – both to opt in and to opt out with respect to what, in their eyes, is the same substantive claim (a claim for overtime) would likely cause considerable confusion. See Riddle, 2007 WL 2746597, at *4 (noting "substantial" risk that putative class members would be confused by such a notice); De La Fuente v. FPM Ipsen Heat Treating, Inc., No. 02 C 50188, 2002 WL 31819226, *2 (N.D. Ill. Dec. 16, 2002) ("it seems an inherently difficult task to adequately inform the recipient of his choices in a non-confusing manner"); McClain, 222 F.R.D. at 577 ("it may be confusing for a potential class member to receive a notice indicating that they must opt out of some claims and opt in to others").

For these reasons, court after court has decided that a Rule 23 opt-out class action is not superior to the Congressionally-mandated FLSA opt-in procedure for the adjudication of overtime claims. See Edwards, 467 F. Supp. 2d at 992; Leuthold, 224 F.R.D. at 469; McClain, 222 F.R.D. at 578; Muecke, 2002 WL 1359411, at *2. As one court succinctly summarized in refusing to certify a state law overtime class action under Rule 23, the availability of an opt-in collective action under the FLSA "undercuts all the Rule 23(b)(3) superiority factors." Edwards, 467 F. Supp. 2d at 992 (quoting Leuthold, 224 F.R.D. at 469).

Moreover, as discussed above, to avoid the bar of CPLR § 901(b), Plaintiff and his counsel have chosen to forego an amount equal to 25 percent of the relief available under state law with no countervailing benefit to the putative class or even to Plaintiff himself. It is precisely for this reason that Judge Cogan of the Eastern District of New York recently concluded that even if the plaintiffs in that case could satisfy the other requirements of Rule 23, "it is unclear if a class action would be superior" to other methods of adjudication. Myers, 2007 WL 2126264, at *7.

To the extent *any* group adjudication could ever be appropriate in this matter, there exists an alternative method for adjudicating Plaintiff's state law overtime claim superior to an opt-out class action. As a result, Chase respectfully asks the Court to dismiss or strike Plaintiff's state law class claim for overtime.

## CONCLUSION

Plaintiff's attempt to assert a state law class action claim under Rule 23 is both expressly and impliedly preempted by the written consent requirement that Congress mandated for representative actions under the FLSA, threatens to deprive Chase and absent class members of significant substantive rights, and inherently fails to meet several of Rule 23's requirements for litigating class actions. Accordingly, Chase respectfully asks the Court to dismiss or strike the state law class action claim presented by Count II of the Complaint.

Respectfully submitted,

DATED: May 22, 2008

_/S/ Sam S. Shaulson_
Sam S. Shaulson (SS 0460)
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY
212.309.6000
212.309.6001 (fax)

Sarah E. Bouchard (*admitted pro hac vice*)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, Pennsylvania 19103
(215) 963-5000
(215) 963-5001 (fax)

ATTORNEYS FOR DEFENDANT
JPMorgan Chase & Co.